IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00549-MSK-CBS

DEREK ISAAC ALLMON,
        Plaintiff,
v.

BUREAU OF PRISONS,
HARLEY LAPPIN,
BLAKE DAVIS,
DEBORAH LOCKE,
R. KRIST, and
DIANA KRIST,
        Defendants.

---

## RECOMMENDATION REGARDING DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on the Renewed Motion to Dismiss Plaintiff's Amended Complaint (doc. #105) filed by Defendants Federal Bureau of Prison ("BOP"), Harley Lappin, Blake Davis, Deborah Locke, R. Krist (hereinafter "Captain Krist"), and Diana Krist on July 19, 2012.  Plaintiff Derek Allmon, through counsel, filed his Opposition to Defendants' Motion to Dismiss (doc. #113) on September 17, 2012.  Defendants filed a Reply in Support of Renewed Motion to Dismiss Plaintiff's Amended Complaint (doc. #114) on October 1, 2012.

Pursuant to the Amended Order of Reference (doc. #8) dated April 12, 2011 and a separate memorandum (doc. #108) dated August 16, 2012, the instant motion was referred to the Magistrate Judge.  The court has reviewed the parties' briefs and exhibits, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the following reasons, I recommend that Defendants' renewed motion be granted.

## PROCEDURAL HISTORY

To place the instant lawsuit in context, it is necessary to provide some background information.

Plaintiff currently is incarcerated at United States Penitentiary, Administrative Maximum ("ADX") in

Florence, Colorado, having been transferred to that facility from the United States Penitentiary in Terre

Haute ("USP Terre Haute"), Indiana on or about October 3, 2007.  Many of the facts pertinent to this

case can be gleaned from reported decisions involving Mr. Allmon.[1]

> On April 4, 2006, a jury convicted Allmon on multiple counts for his
> involvement in a drug trafficking operation and a conspiracy to kill a witness.  On June
> 15, 2006, he was sentenced to imprisonment for life.  Four days after sentencing, the
> district court granted the government's motion to restrict Allmon's mail privileges by
> prohibiting him from communicating directly or indirectly with 29 named individuals
> and requiring that all communications directed to the persons listed in the order be
> confiscated and forwarded to the United States Attorney for the Eastern District of
> Arkansas.[2]  Allmon appealed his sentence, and [the Eighth Circuit Court of Appeals]
> affirmed the district court's judgment.  Allmon did not appeal the communication
> restriction.
>
> On November 13, 2007, Allmon asked the district court to amend its order
> restricting his communications.  Allmon requested the court modify its order so he
> could communicate with his daughter, Modesti, and his brother, Kevin Allmon. The
> district court granted Allmon's request on March 12, 2008.

*United States v. Allmon*, 702 F.3d 1034, 1035 (8th Cir. 2012) (internal citations omitted).

The district court further amended the restrictions on Mr. Allmon's communications with an

order issued on March 15, 2010.  As the district court explained:

> It has come to my attention that Defendant has continued to attempt to circumvent
> [prior orders] – and is sometimes successful in slipping his letters past BOP review. . . .
> One BOP incident report indicates that Defendant "has attempted to murder witnesses
> and made death threats against the investigating agent and the AUSAs and their

---

[1] *See, e.g., Allmon v. Federal Bureau of Prisons*, 605 F. Supp. 2d 1, 3 (D.D.C. 2009) (noting that Mr. Allmon was transferred to ADX on October 3, 207 after staff at USP Terra Haute "determined that Plaintiff had 'circumvented and by-passed mail monitoring/screening procedures by contacting . . . individuals in violation of the June 19, 2006 Order'").

[2] The district court's June 19, 2006 order also directed that "all communications, either incoming or outgoing, that is not legal correspondence to counsel of record, should be copied by the Bureau of Prisons and sent to the United States Attorney for the Eastern District of Arkansas."  *See* Exhibit B (doc. #105-2) attached to Defendants' Renewed Motion to Dismiss.

> families," and "has continued this criminal activity through threats at previous
> institutions."  The BOP noted that Defendant maintains "illegal contacts" through
> "indirect channels, compromising/defeating our (FBOP) established security/mail
> screening procedures and communications monitoring efforts."  Late last year, I became
> aware that Defendant continues to send letters of a threatening nature to various
> confederates.  While the threats are not always direct, the message is clear.  Yet,
> somehow, these letters continue to slip through to the intended recipients.

*United States v. Allmon*, No. 4: 04-CR-00169-01-WRW, 2010 WL 936560, at *1 (E.D. Ark. Mar. 15,

2010), *order vacated*, by 702 F.3d 1034.  In light of these circumstances, the district court concluded

that it had the authority *sua sponte* under 18 U.S.C. § 3582(d) to further modify the restrictions on Mr.

Allmon's communication privileges.

> The current restrictions are not tight enough.  In light of the fact that Defendant
> repeatedly has convinced others to do his bidding while he is incarcerated, his right to
> send mail must be restricted even more.  Moreover, the BOP has indicated that it would
> make its job of monitoring much easier if Defendant's mail and contact restrictions
> were tightened.

*Id.*  Citing as supporting authority the decision in *United States v. Felipe*, No. S16 94 CR 395 JSM,

1997 WL 220302, at *2 (S.D.N.Y. Apr. 29, 1997), the district court ordered that Mr. Allmon could

only communicate, via mail or phone, with his counsel of record, and could not receive the *Arkansas*

*Democrat Gazette* or any other publication from central Arkansas.  The district court also directed that

Mr. Allmon's counsel of record could distribute legal materials to third parties only for the purpose of

providing necessary legal services related to Mr. Allmon's post-sentencing proceedings.  *Id.* at *2.

The district court's May 15, 2010 order concluded that more stringent restrictions were necessary after

weighing Allmon's First Amendment rights against the interest in protecting human lives.

   The Eighth Circuit Court of Appeals addressed the legality of Judge Wilson's March 15, 2010

order in *United States v. Allmon*, 702 F.3d at 1035-36.  Although the appellate court acknowledged

that a sentencing court has almost unfettered discretion to impose a communication restriction as part

of an original sentence, the trial court thereafter may impose communication restrictions only "upon

motion by the Director of the [BOP] or a United States attorney," and may not invoke 18 U.S.C. §

3582(d) upon its own motion.  *Id.*  The Eighth Circuit "vacate[d] the district court's March 15, 2010

order, and all subsequent orders to the extent they enforce the restrictions imposed by the March 15, 2010 order, leaving in place the district court's amended order of March 12, 2008." *Id.* at *4.

This is not my first case involving Mr. Allmon and his use of outgoing mail.   On August 25, 2011, I issued a recommendation in *Allmon v. Wiley*, No. 08-cv-01183-MSK-CBS, 2011 WL 4501941 (D. Colo. Aug. 25, 2011).   In that case, Mr. Allmon asserted three claims:   violation of his First Amendment rights based on an alleged denial of access to the courts and interference with his legal mail; violation of his Fifth Amendment procedural due process rights based on his transfer from USP Terre Haute; and violation of his Eighth Amendment rights based on conditions of confinement at ADX.   In that recommendation, I concluded, in pertinent part, that "given the Supreme Court's reluctance to recognize new *Bivens* remedies and the availability of alternative means to obtain relief for the [wrongs alleged in Mr. Allmon's complaint]," defendants were entitled to summary judgment on Mr. Allmon's First and Fifth Amendment claims.   *See id.*[3]

Plaintiff Allmon commenced this action on March 30, 2011 with the filing of a *pro se* Complaint (doc. #3) directed against the named individual defendants.   These defendants have been sued in their official and individual capacities.   Mr. Allmon filed an Amended Complaint (doc. #42-1) on September 8, 2011, joining as a defendant the Federal Bureau of Prisons.   Mr. Allmon seeks injunctive relief against the Bureau of Prisons in the form of a court order requiring BOP "to immediately transfer the plaintiff back to a regular institution closest to his hometown of Dallas, Texas."

In his first claim for relief, Mr. Allmon alleges generally that Defendants Lappin, Davis, Locke, Diana Krist and Captain Krist retaliated against him for exercising his First Amendment rights and conspired to harass and deprive him of those same First Amendment rights.   More specifically,

---

[3]Judge Krieger subsequently granted the motions for summary judgment.   *See Allmon v. Wiley*, 2011 WL 4501937 (D. Colo. Sept. 27, 2011).   That ruling was affirmed by the Tenth Circuit in a decision reported at 483 Fed. Appx. 430 (10th Cir. 2012).

Plaintiff's first claim asserts that on November 3, 2009, he mailed a "nonthreatening letter to his two sons with derogatory comments and 'imprecatory prayer'" regarding a specific Assistant United States Attorney (hereinafter "the AUSA") involved in his 2006 conviction.  Mr. Allmon contends that he handed this letter directly to his unit manager, who in turn delivered the letter to the ADX Special Investigative Services staff.  The letter was "scrutinized, copied, approved, initialed . . . and mailed . . . out."  Mr. Allmon alleges that on December 9, 2009, in response to complaints from the AUSA and "other government employees voicing their dislike for the free speech letter of derogatory remarks," Defendants Davis and Locke "fabricated false reasons to justify indefinitely prohibiting the plaintiff from ever again communicating with his two sons . . . in violation of the First Amendment."

Mr Allmon's first claim further alleges that in February and March 2010, Defendants Locke and Diana Krist "repeatedly violated Plaintiff's right to free speech and association by retaliating and for improper cause rejected most of his outgoing abrasive letters of complaints about ADX executive staff."  In March 2010, Defendants also allegedly "prepared an intentional false and misleading affidavit petitioning the federal court in Arkansas to impose drastic and unjust communication restrictions against Plaintiff due to their dislike of the abrasive letters and desire to retaliate," and allegedly "lied by claiming that Plaintiff maintains 'illegal contact' through 'indirect channels, compromising/defeating our (FBOP) established security/mail screening procedures.'"  Mr. Allmon claims that BOP and Defendant Lappin "approved and executed [this] unwarranted request, which was an intentional act . . . orchestrated and fabricated by the other four defendants."

The second claim for relief alleges that "Defendants" violated Mr. Allmon's due process rights when "they petitioned the court to revise Plaintiff's sentence and impose adverse actions without notice, any opportunity to be heard or any pre-deprivation hearing before suffering a grievous loss prohibiting entirely any/all outside world contact," and infringed upon his "clearly established 'fundamental liberty interest in his relationship with his family/children and they with him.'"

Finally, Plaintiff's third claim asserts an equal protection violation, arguing that Defendants

have "irrationally singled out [Mr. Allmon] as a so-called 'class-of-one.'" Mr. Allmon contends that

on March 15, 2010, after "dup[ing] the federal court in Arkansas with a series of lies and fabricated

information to obtain unjust and very drastic communication restrictions against Plaintiff," Defendants

Davis and Captain Krist "had plaintiff moved to a different cell in SHU and barricaded the outer door

with heavy sandbags from March 15 to till April 13, 2010." Mr. Allmon claims that this unwarranted

treatment had the effect of discouraging ADX staff from interacting with him, restricting his access to

the law library, and reducing his contacts with ADX medical personnel.

Defendants' Renewed Motion to Dismiss raises various challenges to the claims asserted in the

Amended Complaint.[4] Defendants initially argue that Mr. Allmon cannot properly assert a *Bivens*

claim for violations of his First and Fifth Amendment rights. The Renewed Motion to Dismiss also

asserts that Mr. Allmon has failed to alleges facts that would plausibly set forth a retaliation claim

under the First Amendment, or plausibly assert claims under the Equal Protection or Due Process

Clauses of the Fifth Amendment. Finally, Defendants insist they are entitled to qualified immunity as

to all of Mr. Allmon's claims for relief.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6),

---

[4]Defendant Lappin has moved to dismiss all claims against him based on a lack of personal jurisdiction. *Compare Gambina v. Federal Bureau of Prisons*, No. 10-cv-02376-MSK-KLM, 2011 WL 4505085, at *3-4 (D. Colo. Sept. 29, 2011) (holding that the court did not have personal jurisdiction over BOP Regional Director by virtue of his involvement in decisions impacting prisoners housed in Colorado or his alleged failure to meaningfully review the circumstances of the plaintiff's confinement at ADX); *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1246 (D. Colo. 2011) (holding that Defendant Lappin did not have the requisite "minimum contacts" with Colorado simply because he had direct knowledge and had approved the plaintiff's transfer from general population to the ADX control unit); *Nichols v. Federal Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 3219998, at *3-4 (D. Colo. Aug. 12, 2010) (holding that it was not reasonable to suggest that Defendant Lappin might be hauled into court in Colorado "simply because [he has] . . . national supervisory responsibilities over facilities within the forum state"). As Mr. Allmon has consented to Mr. Lappin's dismissal, *see* Plaintiff's Opposition to Defendants' Motion to Dismiss, at 4, there is no need to address Mr. Lappin's arguments in this Recommendation.

the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010), quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*  The purpose of this pleading requirement is two-fold:  "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation and internal quotation marks omitted).

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.  In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  However, the Court need not accept conclusory allegations. . . . Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos. 08-cv-02790-PAB-CBS, 08-cv-02794-PAB-CBS, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Faced with a challenge under Rule 12(b)(6), a plaintiff finds no refuge by arguing "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id.* at 685 (quoting *Twombly*, 550 U.S. at 559).

A.      *"Official Capacity" Claims*

The individual defendants argue that any claim for money damages based upon their official capacity is barred by the doctrine of sovereign immunity.  "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neal*, 867 F.2d 589, 590 (10th Cir. 1989) (federal employees, when sued in their official capacities, are immune from suit unless sovereign immunity has been waived), citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  *See also Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996).  However, it is well-established that the United States is immune from suit unless it has consented to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  *See also United States v. $30,006.25 in United States Currency*, 236 F.3d 610, 613 (10th Cir. 2000) (recognizing that a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed"), citing *Mitchell*, 445

U.S. at 538. The United States has not waived its sovereign immunity for constitutional torts. *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or agencies of the United States.). Mr. Allmon's Opposition brief does not address or refute this argument.

Accordingly, the claims for money damages against Defendants in their official capacities must be dismissed and Plaintiff may recover money damages, if at all, against Defendants in their personal capacities.

B.    *Plaintiff's First and Second Claims*

Defendants' renewed motion to dismiss argues there is no recognized remedy under *Bivens* that would support a retaliation claim under the First Amendment or a procedural due process claim under the Fifth Amendment. I addressed this same issue in *Allmon v. Wiley*, 2011 WL at 4501941. There I noted that in certain circumstances, federal officials may be held personally liable for monetary damages arising out of a constitutional violation. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388. 395 (1971) (holding that damages may be obtained for injuries consequent to a violation of the Fourth Amendment by federal agents). Mr. Allmon's claims against Defendants in their individual capacities for monetary relief are cognizable, if at all, under *Bivens*. However, a *Bivens* remedy will not be allowed when other "meaningful safeguards or remedies for the rights of persons situated" are available under circumstances comparable to the plaintiff's. *National Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1248 (10th Cir. 1989) (internal quotation marks and citation omitted). *See also Berry v. Hollander*, 925 F.2d 311, 315-16 (9th Cir. 1991) ("Although these remedies do not guarantee full and independent compensation for constitutional violations suffered[,] . . . [w]hen Congress has created a statutory remedy for potential harms, the courts must refrain from implying non-statutory causes of actions such as *Bivens*.").

Since *Bivens*, which allowed an action for damages for a Fourth Amendment violation, the Supreme Court has recognized a *Bivens* remedy in only two types of cases: Eighth Amendment

violations of the Cruel and Unusual Punishment Clause, *Carlson v. Green*, 446 U.S. 14 (1980), and

Fifth Amendment violations of the Equal Protection Clause, *Davis v. Passman*, 442 U.S. 228 (1979).

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67 (2001).  "Since *Carlson* we have consistently

refused to extend *Bivens* liability to any new context or new category of defendants."  *Malesko*, 534

U.S. at 68.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. at 676 (noting that in *Bush v. Lucas*, 462 U.S. 367

(1983), the Court "declined to extend *Bivens* to a claim sounding in the First Amendment," but

because "Petitioners [did] not press this argument" the Court "assume[d], without deciding, that

respondent's First Amendment claim is actionable under *Bivens*").[5]  *See also Saleh v. United States*,

No. 09-cv-02563-PAB-KLM, 2011 WL 2682803, at *11 (D. Colo. Mar. 8, 201l) ("until *Bivens* has

been extended to First Amendment claims in this context, there is no legal basis to recognize any claim

for damages against these Defendants in their individual capacities"), *Report and Recommendation*

*adopted in part, overruled in part on other grounds*, 2011 WL 2682728 (D. Colo. July 3, 2011).

    In *Wilkie v. Robbins*, the Supreme Court rejected an expansive application of the *Bivens*

remedy, suggesting there "is not an automatic entitlement no matter what other means there may be to

vindicate a protected interest."  551 U.S. 537, 550 (2007).  In determining whether a broader *Bivens*

remedy should be recognized, first "there is the question whether any alternative, existing process for

protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing

a new and freestanding remedy in damages."  Federal courts must also "make the kind of remedial

determination that is appropriate for a common-law tribunal, paying particular heed, however, to any

special factors counseling hesitation before authorizing a new kind of federal litigation."  *Id.* at 551

(citation omitted).  "[T]here is no reason to rely on a court-created remedy, like *Bivens*, when Congress

---

[5]More recently in *Reichle v. Howards*, _ U.S. _, 132 S. Ct. 2088, 2093 n.4 (2012), the
Supreme Court again acknowledged its past reluctance to extend *Bivens* remedies to First Amendment
claims, but concluded that "we need not (and do not) decide here whether *Bivens* extends to First
Amendment retaliatory arrest claims."  *See also Minneci v. Pollard*, _ U.S. _, 132 S.Ct. 617, 622
(2012) (observing that since 1980, "the Court has had to decide in several different instances whether
to imply a *Bivens* action" and "in each instance it has decided against the existence of such an action").

has created an adequate means for obtaining legal redress." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005). Here, Mr. Allmon had alternative means to redress his First and Fifth Amendment claims. A prisoner may seek injunctive relief against BOP officials, *Malesko*, 534 U.S. at 74, or he may pursue a remedy under the mandamus statute, 28 U.S.C. § 1361. *See Simmat*, 413 F.3d at 1233-34. In the procedural due process context, the appropriate remedy is not damages, but "procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

To the extent that Plaintiff alleges that he was denied procedural due process before being subjected to additional restrictions on his mail privileges, Mr. Allmon successfully challenged Judge Wilson's March 15, 2010 order on appeal. *See, e.g., Burton-Bey v. United States*, 100 F.3d 967, at *2 (10th Cir. 1996) (holding that the unauthorized intentional deprivation of property does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available). Moreover, Defendants' contact with Judge Wilson or the United States Attorney's Office is clearly authorized by 18 U.S.C. § 3582(d) which permits the Bureau of Prisons or the United States Attorney's Office to affirmatively seek an order placing restrictions on a prisoner's right to communicate with specified individuals.

Plaintiff's Opposition to Defendants' Motion to Dismiss does not address Defendants' *Bivens* argument or cite any judicial precedents that would contradict the foregoing analysis. Given the Supreme Court's reluctance to recognize new *Bivens* remedies and the availability of alternative means to obtain relief for the alleged wrongs, I recommend that Mr. Allmon's first and second claims for relief be dismissed with prejudice.

Even if a *Bivens* remedy was available for violations of the First Amendment and the Due Process Clause of the Fifth Amendment, Mr. Allmon's first and second claims are legally deficient in significant respects. In *Gandy v. Ortiz*, No. 04-1225, 122 Fed. Appx. 421, at *2 (10th Cir. 2005), the Tenth Circuit recognized that corrections officials may restrict outgoing prisoner "correspondence that

include threats, . . . discuss criminal activities, or otherwise circumvent prison regulations."  Mr.

Allmon's first claim challenges Defendants Davis' and Locke's response to Mr. Allmon's November

3, 2009 letter to his sons.[6]  Judge Wilson's June 19, 2006 order specifically directed the Bureau of

Prison to copy and forward to the United States Attorney for the Eastern District of Arkansas "all

communication, either incoming or outgoing, that is not legal correspondence to counsel of record."

*See* Exhibit B (doc. #105-2) attached to Defendants' Renewed Motion to Dismiss Plaintiff's Amended

Complaint.  The court has reviewed Mr. Allmon's letter to his sons and concludes that the

correspondence could not be considered "legal mail sent to Mr. Allmon's counsel for record."  Plaintiff

concedes that the letter contains derogatory and plainly retributative references to the AUSA who

prosecuted his case in the Eastern District of Arkansas.  The letter in question also expresses Mr.

Allmon's hope for the unpleasant demise of several individuals described as "snitches," including at

least two individuals referenced in Judge Wilson's order.  *See Allmon v. Wiley*, 483 Fed. Appx. at 432

(noting that an inmate's exercise of his First Amendment rights may be limited by rules reasonably

related to legitimate penological interests).

A prisoner does not have a constitutionally protected right to send correspondence that conveys

a "true threat," even if the threat is conveyed in language that would otherwise be protected.  *Torres v.*

*Clark*, No. 1: CV-10-1323, 2012 WL 4484915, at *7-8 (M.D. Pa. Sept. 27, 2012) ("the fact that a

threat is subtle does not make it less of a threat").  As the court in *Torres* explained,

> "True threats" encompass those statements where the speaker means to communicate a
> serious expression of an intent to commit an act of unlawful violence to a particular
> individual or group of individuals.  The speaker need not actually intend to carry out the
> threat.  Rather a prohibition on true threats "protect[s] individuals from the fear of
> violence" and "from the disruption that fear engenders," in addition to protecting people
> "from the possibility that the threatened violence will occur."

*Id.* at *7, quoting *Virginia v. Black*, 538 U.S. 343, 359-60 (internal citations omitted).  Given all the

_____

[6]This document was submitted for the court's *in camera* review pursuant to an Order (doc. #89)
issued on January 17, 2012.

attendant circumstances, I cannot treat Mr. Allmon's November 3, 2009 as simply conveying

unflattering opinions regarding a particular prosecutor or individuals from Plaintiff's past.  Rather, Mr.

Allmon appears to articulate a sincere wish that these individuals suffer harm in the future.  *Cf.*

*Procunier v. Martinez*, 416 U.S. 396, 414 (1974) ("Prison administrators are not required to show with

certainty that adverse consequences would flow from the failure to censure a particular letter."),

*overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989);  *Samford v.*

*Dretke*, 562 F.3d 674, 680 (5th Cir. 2009) ("Prisons have a legitimate interest in protecting crime

victims and their families from the unwanted communications of prisoners when a victim requests that

the prison prevent such communication).  I do not find that the November 3, 2009 letter was protected

by the First Amendment.

Moreover, Defendants Davis and Locke are entitled to absolute immunity from liability for

damages to the extent they were forwarding the November 3, 2009 letter in compliance with a facially

valid court order.  *See Moss v. Kopp*, 559 F.3d 1155, 1163-1168 (10th Cir. 2009) ("[t]o allow plaintiffs

to bring suit any time a state agent executes a judicial order which does not fulfill every legal

requirement would make the agent 'a lightening rod for harassing litigation aimed at judicial orders'").

The Tenth Circuit has held that "enforcing a court order or judgment is intrinsically associated with a

judicial proceeding," and that "[a]bsolute immunity for officials assigned to carry out a judge's orders

is necessary to insure that such officials can perform their function without the need to secure

permanent legal counsel."  *Valdez v. City and County of Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989)

('it is simply unfair to spare the judges who give orders while punishing the officers who obey them").

*See also Smeal v. Alexander*, No. 5:06 CV 2109, 2006 WL 3469637, at *6 (N.D. Ohio Nov. 30, 2006)

("quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the

judicial process that they are considered an arm of the judicial officer who is absolutely immune").

Finally, to properly assert any claim under *Bivens*, Mr. Allmon must set forth sufficient facts to

demonstrate that each of the named defendants personally participated in the alleged First and Fifth

Amendment violations. *Cf. Persaud v. Doe*, No. 06-6234, 213 Fed. Appx. 740, 743 (10th Cir. 2007).

*Cf. Matson v. Kansas*, No. 11-3192-SAC, 2012 WL 28073, at *2 (D. Kan. Jan. 5, 2012) ("An essential

element of a civil rights claim against an individual is that person's direct personal participation in the

acts or inactions upon which the complaint is based."). There must be an affirmative link between the

alleged constitutional violation and each defendant's participation, control or direction, or failure to

supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). In *Kansas Penn*

*Gaming, LLC*, 656 F.3d at 1215, the Tenth Circuit noted that in a civil rights case asserting claims

against individual government actors, "it is particularly important . . . that the complaint make clear

exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the

basis of the claims against him or her, as distinguished from collective allegations" against the entire

group of defendants.

      The Amended Complaint falls short in providing that required notice. For example, the first

claim alleges that Defendants Locke and Diana Krist rejected "the majority of plaintiff's mail" during

February and early March 2010. There is no allegation that Defendant Davis or Captain Krist had any

involvement in rejecting Mr. Allmon's mail during that period. The first claim broadly alleges that "in

or about March 2010 the said defendants prepared an intentional false and misleading affidavit

petitioning the federal court in Arkansas to impose drastic and unjust communication restrictions

against plaintiff," and that "defendants outright lied." Elsewhere in the first claim, Mr. Allmon

contends that "the ADX/BOP executive staff retaliated and blatantly violated Plaintiff's civil rights by

improperly imposing BOP restrictions." Similarly, the second claim makes no attempt to particularize

the conduct of any individual, but rather simply alleges that "Defendants deprived Plaintiff of his

rights to due process when they petitioned the court" in Arkansas. Such sweeping statements are not

sufficient to place each defendant "on notice of his or her alleged misconduct sufficient to prepare an

appropriate defense." *Id.* Mr. Allmon cannot circumvent the pleading requirements of Rule 8 simply

by making undifferentiated references to "defendants."

Finally, the first claim broadly alleges that "the defendants furthered the unconstitutional violations when they conspired toward an unconstitutional action of retaliation by virtue of mutual understanding to deprive the plaintiff of his rights." Because the Amended Complaint was filed before Mr. Allmon obtained counsel, this court has liberally construed that pleading. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, I cannot assume that Mr. Allmon can prove facts that have not been alleged. *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").

"A claim of conspiracy requires plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citation omitted). "[C]onspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds." *Id.* "However, conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient." *Id.* at 1225 (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)). Mr. Allmon has not alleged any specific communication, cooperation or command from which a conspiracy between the Defendants could be inferred. Mr. Custard's single conclusory reference is not sufficient to state a claim of conspiracy under *Bivens*. *Cf. Twombly*, 550 U.S. at 557 (noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action"). *See also American Dental Association v. Cigna Corporation*, 605 F.3d 1283, 1294 (11th Cir. 2010) (noting that "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy" and "fail to 'nudge . . . claims across the line from conceivable to plausible'").

C.     *Plaintiff's Third Claim*

In this claim, Mr. Allmon is alleging that his equal protection rights under the Fifth Amendment were violated when Defendants Davis and Captain Krist had him moved to a different cell and barricaded the outer door of that cell with heavy sandbags from March 15 to April 13, 2010.  Mr. Allmon further alleges that he was discriminated against as a "class of one."

The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid classifications, but simply prevents governmental decision makers from treating differently persons who are in all relevant respects alike. *Juarez v Renico*, 149 F. Supp. 2d 319, 324 (E.D. Mich. 2001).  *But see Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (recognizing that prison officials may "classify inmates differently because of slight differences in their histories," as well as "because some still seem to present more risk of future misconduct than others").

In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d at 1216-19, the Tenth Circuit discussed at length the pleading requirements that must be satisfied to assert a "class of one" equal protection claim.  A plaintiff must allege that "others similarly situated in every material respect were treated differently, and that the difference in treatment was without rational basis . . . that is that the government action was irrational and abusive and wholly unrelated to any legitimate state activity."  The Tenth Circuit also acknowledged that courts approach class-of-one claims with "caution" since this legal theory "could effectively provide a federal cause of action for review of almost every executive and administrative decision." *Id.* at 1216.  To avoid that outcome, the Tenth Circuit has imposed a "substantial burden" on plaintiffs to demonstrate that others similarly situated in all material respects were treated differently.  The Tenth Circuit in *Bartell v. Aurora Public Schools* held that a class-of-one equal protection claim requires more than "bare assertions of differential treatment." 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist.*, 540 F.3d 1213 (10th Cir. 2008).  In *Rocha v. Zavaras*, 443 Fed. Appx. 316, at *3 (10th Cir. 2011), the Tenth

Circuit held that a plaintiff failed to properly allege a "class of one" equal protection claim where the complaint did not "identify anyone similarly situated who was treated differently."

Mr. Allmon's third claim suffers from that same fatal flaw. The Amended Complaint simply alleges in conclusory terms that Plaintiff was treated "differently than other prisoners similarly situated to him." No specific inmate is identified. Yet, to paraphrase the Supreme Court's decision in *Twombly*, a conclusory allegation is not sufficient to "nudge [a] claim across the line from conceivable to plausible." Mr. Allmon also contends in the third claim that "Defendants cannot show where they have petitioned courts to impose communication restrictions . . . on others as they have against Plaintiff." However, that misstates the applicable legal standard. For purpose of a motion to dismiss under Rule 12, it is Mr. Allmon's obligation to set forth specific factual allegations that plausibly suggest the defendants are liable for violating the Equal Protection Clause. He has not sustained that burden.

D.      *Qualified Immunity*

To the extent that Mr. Allmon is suing Defendants in their individual capacities, Defendants have raised the defense of qualified immunity. The Supreme Court has recognized a qualified immunity defense for *Bivens* claims against federal officials. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

"Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court has concluded in this Recommendation that Mr. Allmon has failed to state any claim upon which relief can be granted against them, Defendants in their individual capacities are entitled to qualified immunity from his claims brought pursuant to *Bivens.*

 E. *Plaintiff's Request for Injunctive Relief*

Finally, Mr. Allmon's Amended Complaint seeks injunctive relief against the Bureau of Prisons in the form of a court-ordered transfer to a BOP facility in Texas.  In view the foregoing Recommendation that Plaintiff's claims be dismissed, I also recommend that the request for injunctive relief against the Bureau of Prisons be denied.

As the district court noted in *Crooker v. Murphy*, No. CA 11-16 M, 2011 WL 2446492 (D. R.I. May 20, 2011), federal courts do not have jurisdiction to determine where prisoners will serve their sentence.  "The authority to determine the place of confinement resides exclusively in the executive branch of government and is delegated to the BOP." *Id.* at *5.  *See also Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976) ("[T]he control and management of federal penal institutions lies within the sound discretion of the responsible administrative agency, and judicial review will be granted only upon a showing that prison officials have exercised their discretionary powers in such a manner as to constitute clear abuse or caprice.").

> The federal statute governing the BOP's authority expressly strips this court of jurisdiction to review certain decisions made by BOP officials.  It is well settled that this exclusion applies to cases in which inmates are challenging their security classifications and facility designations.

*Brown v. Holder*, No. 09-2364 (RMU), 2011 WL 1002704, at *2 (D.D.C. Mar. 22, 2011).  Moreover, "it is well settled that [an inmate] has no constitutional right to be confined in a particular prison, facility or rehabilitative program." *See Perez-Rodriguez v. Hold*, No. 4:10-CV-1312, 2010 WL 5437492, at *2 (M.D. Pa. Nov. 3, 2010).

Mr. Allmon does not have a valid due process right to be transferred to a federal institution

closer to his home.  *Cf. Cruz v. Barada*, No. 05-CV-129-HRW, 2006 WL 276938, at *3 (E.D. Ky. Feb.

3, 2006).  Accordingly, any construed Fifth Amendment claim against the Bureau of Prisons asserting

an alleged denial of due process relating to a transfer to a different facility would fail to state a claim

for relief, and therefore should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Renewed Motion to

Dismiss Plaintiff's Amended Complaint (doc. #105) be granted.  All claims against Defendant Lappin

should be dismissed for lack of personal jurisdiction, and the request for injunctive relief against

Defendant Federal Bureau of Prisons also should be dismissed.  The first and second claims for relief

in Plaintiff Allmon's Amended Complaint should be dismissed with prejudice as to all individual

defendants.  I further recommend that the third claim for relief be dismissed without prejudice, and that

Mr. Allmon be allowed to file a second amended complaint as to that specific claim.  While Plaintiff

should be permitted to file another amended complaint within a specified period, Mr. Allmon is on

notice that his next attempt to assert an equal protection claim under *Bivens* must be made in

accordance with Rule 11 of the Federal Rules of Civil Procedure and should correct the pleading

deficiencies addressed in this Recommendation.

### Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with the

Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put

the District Court on notice of the basis for the objection will not preserve the objection for *de novo*

review.  "[A] party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for de novo review by the district court or for appellate

review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 11th day of February, 2012.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge