IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-00549-MSK-CBS

DEREK ISAAC ALLMON,

      Plaintiff,

v.

HARLEY LAPPIN;
BLAKE DAVIS;
DEBORAH LOCKE;
DIANA KRIST; and
R. KRIST,

      Defendants.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS,
ADOPTING RECOMMENDATION, AND GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to Mr. Allmon's Objections (**# 124**) to

the Magistrate Judge's February 11, 2013 Recommendation (**# 122**) that the Defendants'

renewed Motion to Dismiss (**# 105**) be granted, and the Defendants' response (**# 125**).

## FACTS

According to the *pro se* Amended Complaint (**# 53**), Mr. Allmon is an inmate in the

custody of the Federal Bureau of Prisons ("BOP").  He is currently housed at the BOP's

Administrative Maximum ("ADX") facility.  He alleges that in November 2009, he sent a

"nonthreatening letter" to his sons in which he made "derogatory comments and [an]

imprecatory prayer about" an Assistant United States Attorney ("AUSA") who had prosecuted

him.  Although ADX prison staff reviewed the letter and allowed it to be mailed out, Mr. Allmon

alleges that the AUSA contacted ADX staff and complained about the decision to allow the letter

1

to be sent.  Thereafter, Defendants Davis and Locke "fabricated false reasons to justify indefinitely prohibiting [Mr. Allmon] from ever again communicating with his two sons." Specifically, he contends that Defendants Davis and Locke "falsely claimed that [he] had circumvented ADX mail monitoring and screening procedures, violated a court order, and threatened [the AUSA]."

Mr. Allmon contends that he protested the imposition of restrictions on his ability to write to his sons by lodging oral and written complaints, engaging in a hunger strike, and refusing medication.  He contends that in January 2010, unspecified members of "ADX executive staff" retaliated against him for his complaints by directing that he be placed in the Special Housing Unit ("SHU") and denied access to mail, personal property, and other privileges.  Mr. Allmon alleges that he responded to his assignment to the SHU by sending "many nonthreatening letters of abrasive free-speech comments about Defendants B. Davis, D. Lock, D. Krist," and other ADX staff to Mr. Allmon's family and friends.  He contends that Defendants Locke and Diana Krist retaliated against him for such letters by "reject[ing] most of his outgoing abrasive letters of complaints."  The ostensible reason for rejecting the letters was that Mr. Allmon was using words such as "snitch" and making reference to the November 2009 letter he had written to his sons, but he alleges that the true reason for Defendants Locke and Diana Krist's actions were because the letters referred to them (and other ADX staff) with insulting epithets.

In March 2010, the Defendants submitted an affidavit to the United States District Court in Arkansas (which had initially sentenced Mr. Allmon), explaining the justification for the mail restrictions placed upon him.  The affidavit explains that Mr. Allmon maintains "illegal contact through indirect channels" with certain persons, "compromising/defeating [the BOP's]

established security/mail screening procedures," although Mr. Allmon contends that these allegations are "outright li[es]" and denies that he has made any improper use of the mails.  He alleges that these acts constitute prohibited retaliation against him for his exercise of his First Amendment rights.

Mr. Allmon further contends that at some point in March 2010, the Defendants "petitioned the court to revise [his] sentence" so as to "prohibit[ ] entirely any/all outside world contact" – apparently referring to a request that would prohibit him from sending correspondence to members of his family.  (It is not clear whether this was in conjunction with the affidavit supplied to the court in Arkansas, or a separate act, nor is it clear which Defendants allegedly participated in this act.)  He contends that this action was undertaken without notice to him or an opportunity to be heard, thus constituting a deprivation of constitutional rights to due process.

Finally, Mr. Allmon alleges that he has been denied his right to equal protection as guaranteed by the Fifth Amendment.  He contends that he has been singled out as a "class of one," and "treated differently from others similarly situated."  This claim appears to arise out of allegations that the Arkansas court granted the requested communication restrictions, and that in response, Defendants Davis and R. Krist "had [Mr. Allmon] moved to a different cell in SHU and barricaded the outer door with heavy sandbags" for a period of approximately one month.[1] He contends that during this time, staff members avoided him, depriving him of medical treatment, library materials, and other privileges because of the presence of the sandbags.  He states that ADX has "many prisoners with all different levels of communication restriction," but that none of them have had their cell doors barricaded with sandbags as a result.

---

[1]     Mr. Allmon suggests that barricading cell doors with sandbags is a practice typically used with inmates who throw urine or feces at staff members.

Based on these allegations, Mr. Allmon asserts three *Bivens* claims for relief, sounding in: (i) First Amendment retaliation; (ii) denial of due process; and (iii) denial of equal protection.

The Defendants moved to dismiss (**# 105**) Mr. Allmon's claims against them on various grounds.  On February 11, 2013, the Magistrate Judge issued a Recommendation (**# 122**) that the Defendants' motion be granted in its entirety.  The first several pages of the Magistrate Judge's Recommendation recite additional facts regarding Mr. Allmon that are not present in the Amended Complaint, but which the Magistrate Judge thought were necessary "to place this lawsuit in context"[2]: (i) that Mr. Allmon was convicted in 2006 of, among other things, conspiring to kill a witness; (ii) that in a June 19, 2006 order, the sentencing court granted the Government's motion to prohibit Mr. Allmon from communicating, directly or indirectly, with 29 named individuals;  (iii) in 2007, the sentencing court modified that order to permit Mr. Allmon to communicate with his daughter and his brother; (iv) that in March 2010, the sentencing court *sua sponte* found that Mr. Allmon "continues to send letters of a threatening nature to various confederates," notwithstanding the mail restrictions, and thus, it was appropriate to amend the terms of his sentence under 18 U.S.C. § 3582(d) to restrict Mr. Allmon's ability to speak or write to anyone other than his attorney of record, and that his

---

[2]     Mr. Allmon does not appear to object to the Magistrate Judge having considered these additional facts, and the Court finds that the procedural history of Mr. Allmon's criminal case and the basis and contours of the correspondence restrictions he raises here are appropriate subjects for judicial notice under Fed. R. Evid. 201.  Those restrictions are embodied by orders from a federal court and thus, their existence and scope may be readily determined from sources – whether the orders themselves or the courts' subsequent iterations of them – whose accuracy cannot be questioned.  Fed. R. Evid. 201(b)(2).  The Court may consider facts that are subject to judicial notice when ruling on a motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Evid. 201(d).

This Court frequently refers to documents of record in the Arkansas action, *U.S. v. Allmon*, E.D. Ar. Case No. 04-cr-169, and when doing so, will note the relevant docket number in parentheses.

attorney could only forward mail of a legal nature to others on Mr. Allmon's behalf[3]; and (v) that

in December 2012, the 8th Circuit Court of Appeals subsequently vacated the additional

restrictions imposed by the sentencing court in March 2010, finding that a court may impose

communications restrictions under 18 U.S.C. § 3582(d) only upon a motion by the Government

or BOP, not *sua sponte*. *See generally U.S. v. Allmon*, 702 F.3d 1034 (8th Cir, 2012) (reciting all

of the enumerated facts set forth above).[4]

      Turning to the substantive merits of Mr. Allmon's claims, the Magistrate Judge found: (i)

that Mr. Allmon's "official capacity" claims against the Defendants were barred by the doctrine

of sovereign immunity; (ii) that Mr. Allmon's first and second claims (First Amendment

retaliation and deprivation of due process) were not cognizable under *Bivens*, insofar as the

Supreme Court has refused to extend the reach of *Bivens* beyond claims arising under the Fourth

Amendment, Eighth Amendment, and the Fifth Amendment's equal protection clause and

because Mr. Allmon had alternative means to challenge the underlying conduct; (iii) that even if

a *Bivens* remedy was available, his First Amendment claim failed to state a claim because

prisoners lack First Amendment protection for "true threats" and Mr. Allmon's November 2009

letter to his sons met that test and because the Defendants were absolutely immune to claims

---

[3]     This new restriction appears to be the matter addressed in Mr. Allmon's first and second claims for relief in this case.

[4]     The Magistrate Judge also noted that Mr. Allmon had previously filed a civil suit in this Court, raising *Bivens* claims sounding in First Amendment retaliation, based on the BOP's interception of correspondence Mr. Allmon attempted to send (which requested that the recipient place liens on property owned by four BOP staffers in conjunction with another civil suit Mr. Allmon was pursuing) and the BOP's placement of Mr. Allmon in disciplinary segregation as a result of that correspondence.  This Court granted summary judgment to the Defendants, finding that Mr. Allmon could not show that his speech was protected by the First Amendment and could not show that his housing assignment was changed at any time. *Allmon v. Wiley*, 2011 WL 4501937 (D. Colo. Sept. 27, 2011).  The 10th Circuit affirmed the Court's grant of summary judgment. *Allmon v. Wiley*, 483 Fed.Appx. 430 (10th Cir. 2012).

against them for forwarding that letter to the Court in Arkansas in accordance with that court's orders; (iv) Mr. Allmon failed to adequately allege the personal participation of each Defendant; (v) Mr. Allmon's allegations of a conspiracy among the Defendants were merely conclusory; (vi) Mr. Allmon's "class of one" equal protection claim was inadequate because he provided insufficient allegations of others similarly-situated (although the Magistrate Judge recommended that the dismissal of this claim be without prejudice and that Mr. Allmon be granted one final opportunity to re-plead the equal protection claim); and (vii) Mr. Allmon's request for injunctive relief in the form of a transfer to a different prison sought relief that he was not entitled to regardless of the success of his claims.

Mr. Allmon, through counsel, filed timely Objections **(# 124)**, arguing: (i) the Magistrate Judge erred in concluding that Mr. Allmon had alternative remedies available to him to challenge his First Amendment deprivations (and thus, concluding did not need a *Bivens* remedy), because his only real avenue to obtain review of the Arkansas court's imposition of enhanced restriction was an appeal which, although successful, took two years to complete, leaving him with no meaningful remedy for that two-year period; (ii) the Magistrate Judge erred in concluding that Mr. Allmon's statements in the November 2009 letter were threats, rather than mere criticism protected by the First Amendment; (iii) that the acts of the BOP in sending copies of his correspondence to the prosecuting AUSA amounts to "a form of censorship" in violation of the First Amendment (although it is unclear what particular finding by the Magistrate Judge this argument addresses); and (iv) that the Magistrate Judge misapplied the standards for reviewing pleadings at the motion to dismiss stage and failed to draw reasonable inferences in Mr.

Allmon's favor (although the Objections do not specify which facts the Magistrate Judge failed to construe in Mr. Allmon's favor).[5]

## ANALYSIS

### A. Standard of review

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of the Magistrate Judge's Recommendation *de novo*. However, to be sufficient to preserve the matter for review by this Court, Mr. Allmon's objections must be reasonably specific; an objection that does not point the Court to the specific factual or legal issue is insufficient. *U.S. v. 2121 East 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In this regard, the Court finds that Mr. Allmon's bare assertion that the Magistrate Judge misapplied the appropriate standard of review fails to direct the Court to any particular factual findings by the Magistrate Judge that Mr. Allmon disputes or any particular facts that Mr. Allmon contends the Magistrate Judge did not properly consider. Accordingly, the Court finds that issue is not sufficiently preserved for review.

The Court further notes that, because Mr. Allmon's Amended Complaint (but not his Objections) was drafted at a time when Mr. Allmon was proceeding *pro se,* the Court will construe the allegations therein liberally in accordance with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Allmon's use of legal terminology and proper English,

---

[5] The Objections do not address the Magistrate Judge's recommendation with regard to the equal protection claim, except through a single sentence that reads "The Defendant does not the recommendation that he be allowed to amend his Equal Protection claim under Bivens." The Court assumes that "the Defendant" is a typographical error and should properly read "Mr. Allmon," and assumes that Mr. Allmon is indicating that he "does not [object to] the recommendation" with regard to his equal protection claim, so long as he is granted leave to amend it.

7

not to relieve him of the obligation to plead facts sufficient to state a cognizable claim.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B.  Availability of *Bivens* remedy

A *Bivens* action permits a person deprived of federal constitutional rights by a federal actor to maintain an action for monetary damages against that actor in an individual capacity. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  As noted in the Recommendation, since articulating the general theory underlying a *Bivens* claim, the Supreme Court has recognized the viability of such a claim in only a handful of circumstances, and has routinely rejected invitations to extend it to many other types of cases.  *See generally Minneci v. Pollard*, 132 S.Ct. 617, 621-23 (2012).

As the Supreme Court explained in *Wilkie v. Robbins*, 551 U.S. 537, 549 (2007), *Bivens* "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest."   In evaluating whether a given factual situation is one that warrants the creation of a *Bivens* remedy, the Court undertakes a two-step analysis: first, it must consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Id.* at 550.  If the court finds such existing alternatives inadequate, it must turn to the second question: it must "weigh[ ] reasons for and against the creation of a new cause of action, the way common law judges have always done."  *Id.* at 554.

Here, the first question presented is whether Mr. Allmon had an alternative remedy available to him to redress his complaints that the Defendants retaliated against him for engaging in First Amendment speech in his November 2009 correspondence to his son.  The Court finds that Mr. Allmon had such a remedy, and thus, allowing a *Bivens* claim to lie here is unnecessary.

Key to this finding is carefully identifying the conduct Mr. Allmon complains about (the Defendants allegedly conspiring to convey false information about his attempts to circumvent the court's no-correspondence order) and the harm that resulted to Mr. Allmon (the court entering an order imposing additional restrictions).  Because the harm took the form of an appealable court order, Mr. Allmon had an alternative remedy to alleviate that harm; indeed Mr. Allmon availed himself of that alternative remedy and obtained relief from the harm caused by the Defendants' conduct.[6]  (In addition to an appeal, Mr. Allmon also has the ability to request that appropriate authorities investigate whether the Defendants' allegedly false statements to the sentencing court constitute prosecutable perjury, or request that the sentencing court hold them in contempt for giving false statements.)

Mr. Allmon complains that it took some two years to complete that appeal, during which he remained subject to extensive restrictions on his ability to correspond with others.  But this argument is of no significance for several reasons.  First, the record does not indicate that Mr. Allmon sought a stay (from either the sentencing or appeals courts) of the imposition of the additional restrictions pending his appeal, that he sought an expedited ruling from the 8th Circuit on his appeal, or otherwise availed himself of procedural tools that might have hastened the reversal of the restrictions placed upon him.  This is not to suggest that Mr. Allmon was somehow complicit in prolonging the harm he complains of, but merely a recognition that there

---

[6]     The Court also notes that Mr. Allmon had, and availed himself of, an additional opportunity to dispute the BOP's allegations against him.  Although the sentencing court imposed the March 2010 restrictions *sua sponte*, Mr. Allmon promptly moved for reconsideration of that order (docket # 814) arguing, among other things, that "the BOP is attempting to deceive the court in their desire and normal systematic pattern of retaliation against [him] in order to try saving face."  Thus, Mr. Allmon brought before the sentencing court precisely the same allegations of retaliatory misconduct by the Defendants that he brings before the Court here.

were additional unused tools in this matter that, if deployed, might arguably have granted Mr. Allmon faster or more effective relief from the harm.

Second, this Court would be extremely reluctant to define whether a *Bivens* remedy would or would not properly lie based on whether a particular court acted fast enough in resolving a dispute.  Had the appeals court had ruled in Mr. Allmon's favor after only four months, one might argue that the relatively brief exposure of Mr. Allmon to the correspondence restrictions would mitigate against recognizing an expansion of *Bivens* liability.  Indeed, imagine an alternative scenario: the Defendants committed the same acts of alleged retaliation against Mr. Allmon, and the sentencing court provisionally imposed the same correspondence restrictions pending a hearing to be held a few weeks or months later, but concluded after such a hearing that additional restrictions were not warranted.   It is difficult to imagine a *Bivens* remedy being appropriate in such a circumstance.

When this matter is viewed from a broader perspective, any justification for a *Bivens* remedy evaporates.  In broad terms, the Defendants here are nothing more than witnesses to certain events giving testimony in a proceeding.  They did not request that the sentencing court impose additional restrictions on Mr. Allmon; the court did that *sua sponte*.  They merely provided (allegedly false) information to the Court about what actions Mr. Allmon had taken with regard to his correspondence.  The Defendants here are no different than the urinalysis technician that reports to the court that a parolee has failed a drug test, or a therapist who reports that an probationer missed a required session.  The parolee or probationer might allege that the technician or therapist is fabricating events in order to convince the court to return him to jail, but no court would contemplate granting the parolee or probationer a *Bivens* remedy to then sue

the technician or therapist if the court decides (for whatever reason)[7] not to revoke the individual's status.

Accordingly, the Court finds that Mr. Allmon had alternative means to protect himself against the harm allegedly caused by the Defendants and that it would be impractical and unwise to recognize a *Bivens* remedy in this context.

### C.   Whether Mr. Allmon's correspondence amount to a threat

Mr. Allmon alleges that the Magistrate Judge erred in finding that, even if a *Bivens* remedy was available, Mr. Allmon's First Amendment retaliation claim would fail because the November 2009 correspondence[8] that prompted the alleged retaliation contained "true threats" and thus was not protected by the First Amendment.

Mr. Allmon contends that prisoners retain their First Amendment rights while incarcerated (to the extent not implicated by legitimate penological interests), and cites several cases for the proposition that prison officials cannot punish inmates for, among other things, using "vulgar and racist language" in correspondence or "criticizing prison officials or a Assistant U.S. Attorney."  *Citing Procunier v. Martinez*, 416 U.S. 396 (1974) *and Thornburg v. Abbott*, 490 U.S. 401 (1989).  The Court does not dispute these contentions, but notes that they do not address the Magistrate Judge's actual findings: that Mr. Allmon's correspondence constituted "threats" that are <u>not</u> protected.

---

[7]     The Court notes that the reversal of the sentencing court's correspondence restrictions was not based on a finding that the BOP's allegations against Mr. Allmon were untrue.

[8]     The Court does not understand Mr. Allmon to suggest that some other instance(s) of speech constitute the First Amendment activity he alleges supports his claim.  His Amended Complaint does make a passing reference to the Defendants "reject[ing] most of his outgoing abrasive letters of complaints about ADX executive staff" between February and March 2010, but the Magistrate Judge does not appear to have construed his First Amendment claim to address that issue and Mr. Allmon's Objections do not clearly take issue with the Magistrate Judge's failure to do so.

It is well-settled that the First Amendment does not extend protection to "true threats" – that is "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" or where the individual "directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 359-60 (2003).  The speaker need not actually intend to carry out the threat, nor even have the apparent ability to carry out the threat.  *Id.*; *U.S. v. Ream*, 2013 WL 70687 (10th Cir. Jan. 8, 2013) (slip op.)  The question of whether a threat has occurred is whether those who hear or read the message reasonable consider that an actual threat has been made.  *Id.*, citing *U.S. v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998).  It is not even necessary that the threat be made directly to the proposed victim.  *Id.*

Here, the Court finds that the Magistrate Judge properly concluded that Mr. Allmon's correspondence with his sons in November 2009 contained "true threats" sufficient to remove the matter from First Amendment protection.  A full appreciation of the significance of the November 2009 correspondence requires an understanding of Mr. Allmon's history, and on that point, the Court takes judicial notice of the contents of the Arkansas court's February 25, 2011 Order (docket # 833) denying Mr. Allmon's motion to reconsider the filing restrictions at issue here.  This Court will not repeat that order's findings in detail, but notes that it recites four separate instances in which Mr. Allmon solicited others to murder persons involved in the prosecution against him, and recites other instances in which Mr. Allmon, while incarcerated, threatened to have associates of his kill prison guards and their families.

It is in that light that the Court reviews the November 2009 letter from Mr. Allmon to his sons, which the Defendants have filed with the Court for *in camera* review (**# 89**).  The Court

deduces at least two concerning passages in that letter.  The first is directed at the AUSA who

prosecuted Mr. Allmon's case.  Mr. Allmon devotes a lengthy, fairly graphic paragraph

expressing his bitterness towards the AUSA and his pleasure at certain medical reversals the

AUSA suffered.  It concludes with a mention of the AUSA's spouse "mov[ing] into that

$900,000 house" in a particular neighborhood, and concludes with a statement that Mr. Allmon

would "love to be the one to embalm" the AUSA.  Given Mr. Allmon's history of requesting

confederates to murder individuals he dislikes, a reasonable reader of the letter could conclude

that Mr. Allmon is soliciting his sons (or other associates to whom his sons might communicate

the request) to go to the neighborhood in question and murder the AUSA or members of the

AUSA's family.

The second threat comes in the final paragraph.  Mr. Allmon mentions that certain letters

he attempted to send were intercepted by the BOP, and contends that the BOP "claim[ed] they

constitute threats to snitches because I said that God should just cut [certain individuals

mentioned by name] into pieces and put 'em all in one cheap casket.  I also taped an

advertisement to the letters showing cheap caskets (smile)."  Once again, a reasonable reader,

familiar with Mr. Allmon's history of soliciting the murder of those he considered to be

"snitches" could readily conclude that Mr. Allmon was communicating a genuine threat, in the

form of a request that his sons or his associates take revenge upon the specific persons named in

the letter.

The Court finds that, under the unusual circumstances presented here, these statements

are sufficient to constitute "true threats."  Whether a statement constitutes a true threat is a fact-

intensive inquiry in which the language, context in which the statement was made, and the

recipient's responses are all relevant.  *Nielander v. Board of County Commissioners*, 582 F.3d

13

1155, 1167 (10th Cir. 2009).   Although the particular words used by Mr. Allmon might, in the abstract, appear to be nothing more than frustrated ranting when spoken by another person, knowledge of Mr. Allmon's history of soliciting associates to murder his enemies places those comments in an entirely different context.  Given the frequency with which Mr. Allmon has solicited others to perpetrate violence on his behalf against those who displease him, a reader of Mr. Allmon's correspondence must necessarily be wary of any instance in which Mr. Allmon identifies a specific person and expresses a desire for their death.  A reader could reasonably construe such statements as an implicit request by Mr. Allmon that the recipient of the correspondence understand Mr. Allmon's statement as a request, and thus, construe the statement as a theat.

    As explained in *Martin*, it is not essential that the alleged victim of the threat be the recipient.  163 F.3d at 1216.  Here, the record reflects that the judge presiding over his criminal case perceived the letter to constitute a true threat.  *See* February 25, 2011 Order (docket # 833) (mentioning contents of November 2009 letter in concluding that).  It is not necessary that the recipient of the threat believe that the threatened violence is imminent; in *Martin*, the court cited a case for the proposition that "the recipient of [a] threat reasonably feared violence, even though the defendant was incarcerated, because he might inflict harm upon his release." *Id.*, *citing U.S. v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Here, a reader of Mr. Allmon's statements could assume that Mr. Allmon is soliciting his sons or others to carry out a request by him to harm the identified individuals.  This Court agrees with the Magistrate Judge that, given Mr. Allmon's established history of soliciting the murders of his enemies, his communications of the messages discussed above are sufficient to constitute true threats that fall outside any First Amendment protection.

Accordingly, this Court agrees with the Magistrate Judge that, even if Mr. Allmon could assert a *Bivens* claim sounding in First Amendment retaliation in these circumstances, he nevertheless fails to state a claim because his November 2009 correspondence contained true threats and thus was not protected under the First Amendment.

## CONCLUSION

Accordingly, the Court **OVERRULES** Mr. Allmon's Objections **(# 124)** and **ADOPTS** the Magistrate Judge's February 11, 2013 Recommendation **(# 122).**  The Defendants' renewed Motion to Dismiss **(# 105)** is **GRANTED**, insofar as Mr. Allmon's *Bivens* claims for First Amendment retaliation and due process deprivations are **DISMISSED**, and his *Bivens* claim for violation of equal protection is **DISMISSED** with leave to amend.  Within 14 days of the date of this Order, Mr. Allmon may file a Second Amended Complaint that alleges only the equal protection claim.

Dated this 19th day of March, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge